UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. 3:24-cr-00161** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **ROY LYNN EZELL, JR.** | **MAGISTRATE JUDGE KAYLA D. MCCLUSKY** |

MEMORANDUM RULING

Before the Court is a MOTION TO DISMISS INDICTMENT (the "Motion") [Doc. 19] filed by the defendant, Roy Lynn Ezell, Jr. ("Defendant" or "Ezell") on October 4, 2024. Ezell moves to dismiss the Indictment charging him with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(d). [Doc. 1]. The government filed an Opposition on October 21, 2024, and Defendant filed a Reply on November 1, 2024. [Docs. 25, 26].

BACKGROUND

On August 7, 2024, a federal grand jury returned a one-count Indictment charging the Defendant with violating 18 U.S.C. § 922(g)(1) by possessing a 32 caliber revolver and ammunition after being convicted of five separate felony offenses. [Doc. 1]. For purposes of this Motion, Ezell does not dispute that he has previously been convicted of these crimes, nor that they were punishable by more than one year in prison. [Doc. 26, p. 1]. Defendant's prior felony convictions include: (i) Aggravated Assault, [Doc. 25-2]; (ii) Possession with Intent to Distribute CDS II (Methamphetamine), [Doc. 25-3]; (iii) Aggravated Flight from an Officer, *Id.*; (iv) Possession with Intent to Distribute CDS II (Methamphetamine), [Doc. 25-4], and (v)

Possession of a Firearm by Convicted Felon. *Id*. *See* [Doc. 26, p.1]. Further, at the time of Defendant's arrest, he was on parole for the most recent two of these convictions. [Doc. 26, p. 2; Doc. 25-5].

## LAW AND DISCUSSION

Defendant's Motion asserts that § 922(g)(1) violates the Second Amendment as applied to him in light of the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen,* 597 U.S. 1, 142 S. Ct. 2111, 213 L.Ed.2d 387 (2022), as clarified by *United States v. Rahimi*, 144 S. Ct. 1889, 219 L.Ed.2d 351 (2024). Ezell also points the Court to the recent Fifth Circuit case of *United States v. Diaz*, 116 F.4th 458 (5th Cir. 2024), which describes the proper framework under which district courts are to consider "as-applied" challenges to charges brought under 18 U.S.C. § 922(g)(1).

In opposition, the government first contends that Defendant's parole condition that prohibited possession of a firearm provides a separate basis to restrict Defendant's Second Amendment rights. [Doc. 25, p. 3]. In the alternative, the government contends that the nature of the Defendant's prior convictions defeats his as-applied challenge under applicable law. *Id*. at p. 4. For Defendant's Aggravated Assault conviction, the government relies on the Fifth Circuit's analysis in *Diaz*, 116 F.4th 458. [Doc. 25, pp. 4-9]. As to Defendant's drug convictions, the government asserts that United States' history and tradition is not offended by disarming drug dealers, pointing to founding era laws punishing the trafficking of contraband. *Id*. at pp. 5, 6, 8.

In response, the Defendant first asserts that the government improperly conflates the distinct concepts of parole conditions that prohibit possession of a firearm and the statutory prohibition found in § 922(g)(1). [Doc. 26, p.4]. Next, he asserts that the government has failed to meet its burden under *Bruen* because it has failed to offer any historical regulation that would prevent Defendant from possessing a firearm due to any of his predicate felony convictions. [Doc. 26, pp. 4, 6]. Specifically relating to Defendant's previous drug convictions, he supports his argument through a comparison to colonial-era alcohol laws. [Doc. 26, p.4].

## I. *Legal Standard*

Federal Rule of Criminal Procedure 12(b)(1) states that "a party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the permits." Fed. R. Crim. P. 12(b)(1). "Among other defenses, objections or requests available under Federal Rule of Criminal Procedure 12(b), a party may move to dismiss an indictment based on 'a defect in the indictment,' including 'failure to state an offense.'" *United States v. Wilson,* 2024 WL 4436637, at *2 (E.D. La. Oct. 6, 2024) (citing Fed. R. Crim. P. 12(b)(3)(B)(v)). A court can resolve a motion to dismiss an indictment before trial when the motion presents a question of law. *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011).

## II. *Governing Second Amendment Law*

In *Bruen*, the United States Supreme Court set forth a two-step framework for Second Amendment constitutional challenges. *Bruen*, 597 U.S. at 24. First, "*Bruen* requires the Court to decide 'if the Second Amendment's plain text covers' the conduct

at issue." *Wilson*, 2024 WL 4436637, at *4 (citing *Bruen*, 597 U.S. at 24). *Second*, "the burden […] shifts to the government to demonstrate that regulating [Defendant's] possession of a firearm is 'consistent with the Nation's historical tradition of firearm regulation.'" *Id.* (citing *Bruen*, 597 U.S. at 24). "To satisfy this burden, the government must 'identify a well-established and representative historical analogue, not a historical twin.'" *Diaz*, 116 F.4th at 467 (citing *Bruen*, 597 U.S. at 30). In determining if regulations are relevantly similar under the Second Amendment, the Court must consider "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Bruen*, 597 U.S. at 29.

### III. Section 922(g)(1) is Constitutional as Applied to Defendant

Beginning with the first step of the *Bruen* analysis, the Fifth Circuit made clear in *Diaz* that the Second Amendment's plain text covers felons as among "the people" covered by the Second Amendment.[1] Therefore, the Court will only undertake the second step of the *Bruen* analysis.

In analyzing the second prong, the Court first must determine whether there are historical analogs that "impose a comparable burden on the right of armed self-defense" during the timeframe of the Second Amendment's ratification. *See Bruen*, 597 U.S. at 27. In upholding a § 922(g)(1) conviction predicated on a felony theft conviction, the *Diaz* Court relied on three categories of historical analogues: (i)

---

[1] "The government also raises the familiar argument that *Diaz* is not among 'the people' protected by the Second Amendment. We disagree. […] *Diaz's* status as a felon is relevant to our analysis, but it becomes so in *Bruen's* second step of whether regulating firearm use in this way is 'consistent with the Nation's historical tradition' rather than in considering the Second Amendment's initial applicability." *Diaz*, 116 F.4th 458, 466–67 (5th Cir. 2024) (citing *Bruen*, 597 U.S. at 24).

historical laws that authorized capital punishment and estate forfeiture as consequences of felonies,[2] (ii) two proposals from state constitutional conventions that excluded those deemed dangerous from the right to bear arms,[3] and (iii) the colonial-era "going armed" laws first discussed in *Rahimi* that "prohibited going armed offensively and authorized forfeiture of weapons as punishment." *Id.* at 467, 468, 470. Importantly, in all three categories of analogues discussed in *Diaz*, the consequences of committing certain crimes encompassed forfeiture of the right to bear arms.

Applying this precedent to the instant case, the historical analogs discussed in *Rahimi* and *Diaz* are all rooted in a common purpose: the disarming of individuals viewed to be violent or a threat to public safety.[4] These analogs demonstrate a

---

[2] The Court notes that while the category of what was considered a felony at the time of our Nation's birth was "a good deal narrower," the government finds further support in the additional historical analogs discussed in *Diaz* which "more specifically target the [Defendant's] circumstances" as a violent offender. *Diaz*, 116 F.4th at 468 (citing *Lange v. California*, 594 U.S. 295, 311, 141 S. Ct. 2011, 210 L.Ed.2d 486 (2021).

[3] "The Pennsylvania address suggested that citizens have a personal right to bear arms 'unless for crimes committed, or real danger of public injury.' […] Massachusetts's proposed amendment said that the Constitution authorized 'the people of the United States, who are peaceable citizens, [to keep] their own arms.'" *Diaz*, 116 F.4th at 470 (citing BERNARD SCHWARTZ, THE BILL OF RIGHTS: A DOCUMENTARY HISTORY 662, 665, 681 (1971)).

[4] The *Diaz* court explained that historical laws authorizing capital punishment and estate forfeiture as consequences of felonies were "justified by the need to adequately punish felons, deter reoffending, and *protect society from those proven untrustworthy to follow the law*." *Diaz*, 116 F.4th at 469. (Emphasis added). Similarly, the *Diaz* court found that the proposals from state constitutional conventions "reveal[ed] that the right to bear arms at the time was not unlimited, and that the government could prevent people who had committed crimes or were 'quarrelsome' from accessing weapons." *Id.* Lastly, the *Diaz* court discussed the Supreme Court's finding in *Rahimi* that "going armed" laws punished "those who had menaced others with firearms" because such actions "disrupted the 'public order' and 'le[d] almost necessarily to actual violence.'" *Id.* at 470 (citing *Rahimi*, 144 S. Ct. at 1900-1901).

longstanding "tradition of firearm regulation" which allows the "Government to disarm individuals who present a credible threat to the physical safety of others." *Rahimi*, 144 S. Ct. at 1902.

Here, at least one of the Defendant's underlying predicate crimes – Aggravated Assault – establishes the requisite nexus to public safety.[5] This clearly places the Defendant into the category of those who "present a credible threat to the physical safety of others." *Id.* Like in *Diaz*, the purpose behind the enforcement of § 922(g)(1) against Defendant is "relevantly similar to that of the [historical analogs]: to deter violence and lawlessness."[6] *Diaz*, 116 F.4th at 469. Therefore, the Court finds that the Second Amendment does not preclude the enforcement of § 922(g)(1) against the Defendant in the instant Indictment.

Lastly, for good measure, the Court notes that courts across the country have held § 922(g)(1) constitutional as applied to defendants with the same or similar predicate convictions as Ezell. *See United States v. Powell*, 2024 WL 4502226 (D.D.C. Oct. 16, 2024) (upholding a finding that § 922(g)(1) was constitutionally applied to a

---

[5] Defendant was convicted of Aggravated Assault in Georgia. Georgia law provides that: "(a) A person commits the offense of aggravated assault when he or she assaults: (1) With intent to murder, to rape, or to rob; (2) With a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury; (3) With any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in strangulation; or (4) Without legal justification by discharging a firearm from within a motor vehicle or after immediately exiting a vehicle toward a person, an occupied motor vehicle, or occupied building." O.C.G.A. Sec. 16-5-21.

[6] "The precursor to § 922(g)(1) […] was enacted to 'bar possession of a firearm from persons whose prior behaviors have established their violent tendencies.'" *Diaz*, 116 F.4th at 469 (citing 114 CONG. REC. 14773 (daily ed. May 23, 1968) (statement of Sen. Russell Long of Louisiana)).

defendant previously convicted of Assault with a Dangerous Weapon). *See also United States v. Waulk*, 2024 WL 3937489, at *7 (W.D. Pa. Aug. 26, 2024) (same for predicate convictions of Robbery and Aggravated Assault). *See also United States v. Leslie*, 2024 WL 1718062, at *6 (E.D. Pa. Apr. 22, 2024) (same for predicate conviction of Aggravated Assault).

Thus, nothing in *Bruen,* 597 U.S. 1, casts doubt on the constitutionality of the application of § 922(g)(1) to Defendant, especially when considering clarifying precedents set forth in *Rahimi*, 144 S. Ct. 1889, and *Diaz*, 116 F.4th 458. Because the Court finds that Defendant's predicate conviction of Aggravated Assault fits well within this nation's tradition of firearm regulation and alone precludes his lawful possession of a firearm, the Court need not go further to deny the Defendant's Motion to Dismiss.

## CONCLUSION

Therefore, for the reasons stated herein,

IT IS HEREBY ORDERED that the MOTION TO DISMISS INDICTMENT [Doc. 19] is DENIED.

THUS, DONE AND SIGNED in Chambers on this 8th day of November 2024.

```
                                              DAVID C. JOSEPH
                                              UNITED STATES DISTRICT JUDGE
```